I call the next case, Freedman v. Redstone. Are you all right there? Would you rather sit down? No, Your Honor, I'm perfectly okay. I can stand. If you sit down, we won't see you. May it please the Court, my name is Arnold Gershon from the firm of Barrick, Rodas & Bessine. I represent the plaintiff, Appellant Robert Freedman, and I request three minutes of rebuttal time. The complaint alleges first that the Compensation Committee of the company's Board of Directors awarded cash incentive compensation under the company's 2007 Senior Executive Short-Term Incentive Plan in contravention of that plan. It is, therefore, a stockholder's derivative claim, and so the complaint alleges that pre-suit demand on the board is excused under Delaware law. Now, to show collateral estoppel, identical issues, don't you really have to have the same circumstances now as you had in that 2005 case? Don't a lot of things have to be pretty much the same? You need the same issue, and the issue is whether Alan Greenberg is independent of Sumner Redstone in the context of a motion to dismiss a stockholder's derivative case on behalf of their company, then known as Viacom, and the standard is there must be a reasonable doubt that the director lacks independence. Don't you have to show the circumstances haven't changed? That is the burden of the party opposing collateral estoppel. That is the position of the authorities that we cite. It's the position of the restatement of Judgment Second, Section 27, Comment C. It was the decision of Judge Broderick in the Papianu case. It is the general view that that is the rule. I thought if you're talking about the New York State case. Yes. I thought that case didn't come to a final determination or a final decision with respect to Mr. Goldberg? Greenberg. Greenberg, very sorry. That was just a statement in a pleading, and the court was assessing the sufficiency of the pleadings, but it never really came to a determination whether Mr. Greenberg was independent. Well, in the context of the proceeding in the New York case, what you had was a motion to dismiss based on the failure to sufficiently allege that. The claim stated a cause of action on which relief. Yes, but there had to be shown a reasonable doubt that Mr. Greenberg was independent or lacked independence from Sumner Redstone. But there was the determination by the court. I'm just wondering the extent to which we can give a collateral, a stop and reflect one. There's really no judicial decision. It was just whether there was sufficiency, the issue was sufficiently pled, unless I'm mistaken. Well, what we're talking about is not a final determination in the sense that judgment is entered. What we're talking about is what was the result of the motion. And the rule in New York has been since the middle of the 19th century that decisions on motions can be given collateral estoppel effect. Well, the motion was denied. Excuse me? The motion was denied, was it not? The motion was denied. Therefore, as Judge Ramos decided, there was reasonable doubt that Greenberg was independent of Redstone. That decision was at least final in this sense. It was an appealable order, and indeed an appeal was taken. And the appellate division granted a stay. And what they call a preference under New York law, an expedited hearing, the matter was argued, and then the case was settled without vacatur of that interlocutory order. And the appellate division in the Allstate case held that when you have interlocutory orders in a case, they can be given preclusive effect in a subsequent case, and that settlement of the case does not entail vacatur of that preliminary order. That includes mere assertions in a pleading? Well, it's not just an assertion in a pleading. It's a ruling from the court that the pleadings are sufficient to show that there's a lack of independence here, at least a reasonable doubt, which is all we had to show. That's the Delaware rule. Judge Ramos was addressing Delaware law for the pre-suit demand rule. The lower court, the district court, was addressing the Delaware rule as to whether there was a reasonable doubt that independence. If I give your – if personally I give your argument credence, does it matter that we're talking about a different time frame and a different set of events? The position of the restatement in numerous cases that we cite, including a decision of the Sixth Circuit Court of Appeals, including a decision, I think it's Judge Kaplan, in a case before him on attorney's fees, the reasonableness of it. Judge Feinberg, when he was a district judge in Sherman against Jacobson, and Judge Broderick in the Eastern District of Pennsylvania, said that the fact that it's a different time period does not matter for this time period we're talking about, seven years, unless the party opposing collateral estoppel can show that circumstances have changed. I think I'm going to just address one more point with you. The essence of your argument is that Mr. Greenberg was a good buddy of Mr. Redstone. Yes. Therefore, he is not disinterested. And that was what the court in New York addressed and found back in 2005, I think it was. That's basically your argument. And therefore, he is not disinterested in this case. They're still good buddies. But as I understand Delaware law, just because you're friends with somebody, that doesn't necessarily make you disinterested. Particularly, the Delaware court found that Martha Stewart and a Mr. Bean have been good buddies for a long time, but that didn't mean that Martha Stewart was a disinterested director. So if we apply Delaware law, doesn't that cut directly against you? No. What Judge Ramos held was that Greenberg had rendered valuable service to Sumner Redstone going back to the early 90s. And therefore, because of that close relationship and the reliance placed on Alan Greenberg by Sumner Redstone, Alan Greenberg would be beholden to Sumner Redstone. And what the Chancery Court has held in the limited cases cited in our brief was that there's such a thing as being beholden for past acts that you don't necessarily need to have expect future benefits from this relationship. Past benefits will show, too. That's what the Delaware courts have said we have. It's a factual issue, though, isn't it? Because you could have, for example, a very clear case. You could have a husband and wife, and then you have a situation where following a bitter divorce, they remained in the same corporation. And now maybe the first time the wife wouldn't be independent, but the second time she would be. I mean, so that's a clear-cut case. Yes. But you still have to look at the facts, and the case and circumstances can change. It's up to the party opposing estoppel to show that the circumstances have changed. Were there showings here of any facts? None whatsoever. There were assertions in briefs, in a brief, that… Well, what should we do, remand the matter and tell the judge to have a hearing on whether or not there were changed circumstances? The way you would show changed circumstances, I think that would require at least a motion for summary judgment. The directors could make such a motion that would open the door to discovery on any kind of factual matter that they cared to present, and then we could ask Alan Greenberg and Sumner Redstone how they're getting along these days. But they didn't do that. They went strictly on the pleadings, and the pleadings, strictly saying, strictly pleaded, say that there is collateral estoppel causing issue preclusion of this at this stage of the proceeding. The time period is not too long. The burden to show changed circumstances has not been even attempted, much less met, and the decision was final for collateral estoppel purposes. Can I ask the question in a slightly different area? Where is Congress's clear and manifest purpose to preempt Delaware law with regard to both? Oh, well, now that, you see, you have the statute involved, 162M4C2i, which passes an act, the title of the subsection is certain excessive employee remuneration, and it was the judgment of Congress that if the company wants a tax deduction for this, what it calls excessive employee remuneration, it must meet certain tests. Among those tests is stockholder approval. Right. Now, the statute doesn't say, and the regs don't say, that the vote must be made by stock entitled to vote or voting stock, as Congress has sometimes said and as the Treasury has sometimes said. Here it is silent as to what stock gets to vote. Generally in the United States, preferred stock doesn't vote, does it? Well, you know, you really have to look at the certificate of incorporation to see what it says. But isn't that generally the situation? It's generally, but it's more specific than that, because the certificate of incorporation, which is the relevant provision is in the appendix at page 156. It's 4-2-A of the certificate of incorporation says that Class B stock does not vote, except as otherwise required by law. Now, suppose we had created, properly created, two classes of shares, and one class, I don't know if this has ever been done, one class had two votes, and the other class had only one vote. You follow me? Yes. You get the vote double in one class. Yes. What would happen then? Not sure. So this could create some real problems in state law. Well, we don't, we wondered about that. We looked to see. We found maybe 20, 25 cases that would fit into this, companies that would fit into this category. It's extremely unusual. The statute has been, was passed in 1993, more than 20 years ago. The regs have been in place for almost 20 years. I have seen nothing about this. Nobody has ever brought anything to my attention. It's certainly not in the briefs that the Treasury has ever even given a private letter ruling on this. The answer is unknown. Here's what we do know. We do know that in this case, where you've got the Class A stock with 50 million shares and 50 million votes, of which 80% is held by Sumner Redstone, and the other 460 million B shares do not vote except as required by law, you have complete total subversion of the intendant of Section 162M. And that alone would suggest that there might be preemption. But you can go beyond that. I think there, can I, Judge Van Atterpen's question I thought was more pointed, which is where can you point to that Congress expressly preempted, where there's an express congressional preemption in this case? Well, there is. I don't think that you answered that, and I had an interest in the same question. I know that Congress may preempt matters of taxation or state taxation where there's a conflict, but I don't know that Congress in this case has expressly preempted matters of corporate governance. It's probably not expressed. As this Court held in the case a couple of years ago, Treasurer of New Jersey against the Department of the Treasury went on to explain. That was a great case. Yes, indeed. We cited it. There are three kinds of preemption. There is express preemption and two kinds of implied preemption, field preemption and conflict preemption. This would fall into that second category. Well, Congress never thought of it. That's probably the answer. They just didn't think of this situation arising. So we have to, they certainly, if they had thought of it and they wanted to do it, they could have done it. Yes, they could. But they didn't. But they didn't. So they left it to the courts. Left it to the court. The question is, so what you're saying is that you really can't carry out the intent of Congress without having intention. That is the overall big intent. Well, if you wanted to look at the overall, what Congress did not intend was to empower a beneficiary of a cash incentive plan to control whether the company gets the tax deduction for paying him that incentive compensation. And that is exactly what is happening here. Maybe we can get you back on Roberta because you went over your time quite a bit. Oh, I'm so sorry. We'll get you back. Okay. Mr. Baskin. Good morning, Your Honors. I'm Stuart Baskin of Sherman & Sterling. Let me start with Your Honor's questions, first with respect to collateral estoppel. Point one. The argument that Mr. Gershon just made that there's nothing in the record to suggest a change in circumstances between 2005 and 2012, I would direct Your Honors to page 83 of the record, which is the proxy statement, which he acknowledges is part of the record, legitimately part of the record. That explains exactly why Mr. Greenberg is perceived to be independent today. It explains that the circumstances that existed in 2005, upon which Judge Ramos, Justice Ramos decided the motion to dismiss, have all changed. There is no longer Ed Bear Stearns. Mr. Greenberg is retired. He is now an emeritus chairman of JPMorgan Chase, which does de minimis business with Viacom. And so all the circumstances that were relied upon in 2005 have changed. Judge Greenberg, you remember in your Blassburn decision you said, you have to look at a derivative complaint as of the date of the complaint. The date of this complaint is 2012, not 2005. And the plaintiff does not allege a single fact, not one fact, occurring after 2005, other than to say that Mr. Greenberg and Mr. Redstone are friends, which Judge Fuentes, as you pointed out, Delaware Supreme Court has said in beam and countless cases thereafter, that that doesn't pass muster to establish his lack of independence. So I don't frankly care who has the burden of proof. It's in the record on page 883. But, in fact, under New York law, which is what controls here, Your Honors will see in our brief, if you go to page 27 of our brief, we cite three or four cases which say that under New York law, it is the proponent of the estoppel that has the burden of proof to show that circumstances still pervade and that there is an identity of issue. And that was the Bandsberg case in New York Court of Appeal. When a federal court applies collateral estoppel on a state court judgment, it applies it in accordance with the law of the state, doesn't it? That is correct, Your Honor. It's not a federal issue. That is correct. So you look to New York law. New York law places the burden of proof on them. But, frankly, it does not matter who has the burden of proof, because it was in the record below. It's in the record on appeal. And, in fact, there have been changed circumstances from 2005. And there was not a single allegation in this complaint, let alone a particularized allegation, to suggest that Mr. Greenberg's will would be overborne based on events happening in the 1990s that are not continuing today, when he's now a retired gentleman and emeritus of an entirely different firm that does minimum business with Viacom. So the collateral estoppel argument, with all respect, rests on a premise that is wrong. There is clearly a basis in the record to show the changed circumstance. And, again, if Your Honors go to page 883 of the record. 883. Oh, excuse me, A83. AA3. Yeah, Appendix 83. Okay. It is the page of the proxy statement that sets forth why Viacom has determined that Mr. Greenberg should be classified as an independent director. Mr. Gershom made a point, if I have it correctly, that this case, the New York case, was actually settled. But then he said that despite the settlement, the issues determined before the settlement may have preclusive effect, if I understood his argument correctly. I had not heard that principle before, but maybe you. I thought a settlement sort of annulled everything that occurred before. Well, it effectively does. And I know because I still have the bruises from that original New York case. But what happened was it's so bizarre to have that case being proposed as a basis for collateral estoppel. One day after Justice Ramos decided that decision, we filed an emergency appeal with the appellate division. They stated and they expedited an appeal after the argument, which they effectively made clear they were going to reverse. The case settled for a deminerous amount of money. But my point is you're absolutely right. This was on a motion to dismiss. It was stayed by the court. Its effect was stayed by the court, and it then settled. But it doesn't matter because, again, you have to have an identity of issue as of 2012, not 2005, looking to Your Honor's decision for that authority, and here there plainly is a changed circumstance, and a dramatic changed circumstance. In fact, Mr. Greenberg is one of the most distinguished businessmen in New York. As Chairman Emeritus of JPMorgan Chase, there is not the slightest indication in the record, and they plead nothing to suggest that there would be a basis to believe that his will would be overborne so that he couldn't render an independent judgment in this case. Would you have to admit, though, it does look a little funny, where the Congress wanted sort of an independent vote on it, and the person who controls the independent vote is the person who's getting the money. Well, let me get to that. I mean, if the judge did that, he'd be looking for a new line of work. Well, first of all, Your Honor, let's turn to that issue then. That's a different issue, obviously, the issue of whether there is preemption. Several points to be made. Remember, this is just not a Viacom issue. There are hundreds of companies that have dual classes of stock. And as far as I know. Plus the prime preferred stock. Plus preferred stock. And, frankly, I haven't looked, but last I looked, I think every state in the union allows multi-classes of stock. So if Congress is going to, by saying you have to have a vote, if Congress was It's rather draconian. It certainly does not signal in any way they're overruling the laws of all 50 states by saying you have to have a vote. But more importantly, people know when they buy the shares of a company that has dual classes of stock, they know what their voting prerogatives are. They know what their voting rights are. And there's nothing unfair in saying that this vote, like every other vote that you have in this company, would be done in accordance with how the votes are classified by the corporate charter. There's nothing the slightest bit unfair in that. More importantly, in addition, Your Honors, to that point, remember that we're dealing now with a state area. If you want, remember you've written many decisions, Your Honor, which I've read on preemption. And one of the things you look at is, is there field preemption? Well, here the field is preempted by the state law, not the federal law. The field here is voting rights. And if you wanted to look at who exercises, which sovereign has control over voting rights, the Supreme Court has taught in the CTS case back in the 1970s. It's reiterated many, many times. This is the paradigm field that belongs to the states, not to the federal government. And so one would have thought that if they were to overrule the laws of all 50 states, then, you know, with respect to this issue, there would have been some hint that they would have done so. There would have been a clear pronouncement. There probably would have been an uproar. Right. And the phrase, Your Honor, the legal, the operative phrase, it has to be clear and manifest. And here it is empty. So that the notion that the direction, that there's some implied overruling of the laws of all 50 states, plus raising all the practical problems that Your Honor raised. What do you do with preferred shares? What do you do if companies have multi-classes of stock? What do you do with debentures? And what do you do with all those that are part stock, part debt? All of those, of course, would raise insurmountable problems. And Congress, of course, did not flag in the slightest its interest in doing that. And in addition, remember that there really is no actual conflict here at all, because in parallel statutes that also deal with voting with respect to different stock option plans and other things, their regulations say that, and has always been the case, that you look to the state to define the voting rights. In this regulation that the IRS passed, they said you look to state law to see how you deal with abstentions. Everyone looks to state law for voting right prerogatives. There's no conflict here. And the final irony of this, this is among the most surreal cases in my career, because the plaintiffs are complaining that, gee, you know, the board abused its discretion, and this vote disqualified Viacom from having tax deductibility with respect to its compensation decisions. This goes back to 2007. The IRS has never challenged the tax deductibility of any of this. So there's zero injury to the company. This is pure theory. This is surreal theory and nothing more. Actually, I wanted to ask you a question on that same point, because one of the purposes of 162M is to align the performance incentives with the interests of the shareholders. But how does that happen if the voting stock is in the hands of one person, 79 percent? So how do you assure that the interests of the shareholders are, under 162M, are satisfied? You would surely not, because you have to draw a distinction between two concepts. 162M does not fix compensation. All it does, it creates a ceiling up to which compensation is tax deductible. It sets out the criteria as well and does provide for performance incentives. And so 162M creates the tax deductibility ceiling. That's all it does. And that's done by creating an objective standard, in this case with operating income. If that standard is met, then the ceiling, in this case eight times their bonus, or $51.2 million, becomes the ceiling for tax deductibility. The shareholders are protected not by what the tax deductible ceiling is. The actual compensation is fixed by an independent compensation committee here. And as long as they stay underneath this ceiling, then it remains tax deductible. But that the decision of what compensation should be is, in this case, made by an entirely independent compensation committee, which Delaware law, of course, has said, is entitled to the maximum protections of the business judgment rule in that capacity. So that the shareholder is, the actual setting of the compensation, which is what the shareholders are concerned about, Your Honor, is fixed by an independent compensation committee. It actually is in the shareholder's interest for that ceiling, for tax deductibility purposes, to be set high. Because once the compensation committee fixes compensation, they want it to be tax deductible. Who selects the compensation committee? The compensation committee, Your Honor, is selected by the independent directors of the board. There's no question, there's no challenge, that the five members of the compensation committee are independent directors. That would not include Mr. Redstone. Oh, absolutely not. I mean, Mr. Redstone, Mr. Doma, the CO, Mr. Dooley, the chief operating officer, they are not on the compensation committee. It was set by, compensation is fixed by entirely independent directors, as to whom there is no challenge. So that is the ultimate protection for the shareholders, is that the compensation is fixed. All this ceiling does, it say, if it's fixed below this ceiling, it's tax deductible. And as I said, if the IRS thought they had an incentive to challenge the tax deductibility of the compensation, they would certainly have done so. But they have not done so in seven or eight years now. And so, again, we're dealing with an abstraction wrapped around a theory, I think, and nothing more in this matter. Finally, Your Honors, of course, layered on top of all of this is the fact that if the board of directors, if the compensation committee had decided to blow through the ceiling, if they in fact decided to award non-tax deductible compensation, the Delaware Supreme Court has told us that would not have been a violation of the business judgment rule either, because tax deductibility is just one factor that has to be taken into account in assessing a board's business judgment. So even if they had blown through this ceiling, which they didn't do, and if they set compensation above the ceiling, which they didn't do, it still wouldn't be a violation of the business judgment rule. And that's why we say that this complaint should be dismissed on the merits, not just on the basis of failure to make a demand on the board. I have two minutes left. I'm happy to answer any questions, but I think I've sort of addressed the issues Your Honors raised. Thank you very much. Very good. No further questions. Mr. Baskin, thank you very much. Mr. Gershon. May it please the court. On the question of Alan Greenberg's independence, I heard my learned friend refer to the proxy statement that's in the record asserting that Alan Greenberg is independent. Of course, many years ago in the Oran against Stafford case, this court held that the contents of a proxy statement may be considered for what they say, but not to establish the truth of the statements made in a proxy statement. So it's at A83, that's what he was talking about? Yes, Your Honor. As to what the appellate division made clear in the oral argument on the appeal of the first Viacom case, it's certainly not in the record for anybody to see. We do know that the case was settled, and you can read the settlement papers, and they do not show that there was any vacatur of that order as the same court, the appellate division first department held in the Allstate case, a settlement does not cause the vacatur of intermediate orders. We're not talking here about whether, at least for what we've been arguing in terms of 162M, whether the Board of Directors abused its discretion in awarding compensation. That's another part of the case. Here we're talking about the complaints allegation that the Board of Directors declined to allow the Class B stock to vote, even though Class B stock is non-voting only except as otherwise provided by law, and our submission is that the way this particular case is set up, that it is impossible that this complies with what 162M described and therefore should be deemed against the requirements of Section 162M, and therefore of its own force of the charter, the Class B stock should be entitled to vote. What is the significance of the fact that he represents that the IRS never challenged this? Does that have any significance? Well, it's not clear what they told the IRS, whether they showed them the way the plan was approved. Well, I'm assuming that they didn't tell them anything. That would be my assumption, that they just fill out Schedule M-3 and put those numbers in there. Let's assume they did that so they never told them, but the IRS never challenged it, so it's past the challenge period now. I suppose, well, what is it, three years? Three years. Well, what significance is that? I don't think it has any significance at all. That's my submission, because we're not talking about what the IRS did. In fact, it's possible, and whatever it did, whatever the IRS did, is certainly not binding on the United States or what they didn't do, because if the United States, if the Treasury were to decide that this was fraudulently misreported to them, there would be no statute of limitations at all. They could always go back and take a look and see what to do about the tax consequences of this. Isn't it six years for fraud? I don't know. There's no statute of limitations for civil fraud. I think it's Section 65.1c of the Internal Revenue Code, I think. Okay. Okay. Mr. Gershon, thank you very much. Thank you. Thank you for your excellent arguments, and Mr. Baskin as well.  The case is dismissed.